IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

| | |
|---|---|
| RICHARD GILL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 3:11CV85–HEH |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This is an action challenging the Social Security Administration ("SSA")'s denial of disability ("DIB") benefits to Plaintiff Richard Gill ("Plaintiff"). The matter is presently before the Court on the Report and Recommendation ("R&R") of the U.S. Magistrate Judge concerning the parties' cross-motions for summary judgment and Plaintiff's objections thereto. This Court will dispense with oral argument because it would not materially aid in the decisional process.

For the reasons set forth herein, Plaintiff's objections will be overruled and the R&R will be adopted. Accordingly, Defendant's motion for summary judgment will be granted; Plaintiff's motion for summary judgment will be denied; and the decision of the Commissioner will be affirmed.

# I. BACKGROUND[1]

## A. Medical History

After a fifteen year career as a pilot, Plaintiff suffered a heart attack and disc rupture. (R. at 96-100.) In 2005, his family physician—Dr. Simpson—referred him to Dr. Mehta, a neurologist. (R. at 368.) After pain medications failed to relieve his back pain, Dr. Mehta recommended that Plaintiff undergo a discectomy, which is a surgical means of decompressing ruptured discs. (R at 366.) One month after his surgery, Plaintiff reported that he was "pain free." (R. at 364.) But by December 2005, Plaintiff returned to Dr. Mehta reporting that the pain had returned. (R. at 361.) Dr. Mehta concluded that a weak disc was causing the problem and recommended physical therapy and anti-inflammatory medication until it could heal. (R. at 361.) By March 2006, Plaintiff had achieved his physical therapy goals and, at that time, did not report further pain to Dr. Mehta. (R. at 225-30, 360, 439.)

In July 2007, however, Plaintiff returned to Dr. Mehta reporting that the back pain had returned together with right leg pain. (R. at 360.) Although the surgery had "helped exceptionally well," Dr. Mehta noted that Plaintiff had a "difficult gait" and "paraspinal muscle spasming." (R. at 616.) MRIs revealed "edema in the endplates and some retrolisthesis," but no evidence of recurring disc protrusion to account for the pain. (R. at 357-58, 360, 615.) Accordingly, Dr. Mehta concluded that further surgery was

---

[1] The following facts are drawn from the administrative record, which has been filed under seal pursuant to E.D. Va. L. R. 5 and 7(C). In accordance with these Rules, this Court will endeavor to exclude any personal identifiers from its discussion, and will incorporate Plaintiff's medical information only to the extent necessary for proper analysis. The Court will reference the record using the following citation format: (R. at [page number]).

2

unwarranted, instead referring Plaintiff to Dr. Crane, a pain management specialist. (R. at 356.)

Dr. Crane first examined Plaintiff on July 24, 2007, noting an antalgic gate while also finding that Plaintiff retained full muscle power, normal muscle bulk and tone, intact sensation, and full range of motion with no signs of inflammation. (R. at 383-84.) Based on this assessment, Dr. Crane prescribed medial branch blocks—a pain relief technique involving the injection of anesthesia around the cervical nerves. (R. at 373-74, 383-84.) Plaintiff began the treatments in August of 2007 and within about one month he reported a thirty-five percent improvement in overall activity levels. (R. at 373, 595, 658.) Range of motion, strength, and pain levels had all improved enough that Plaintiff was able to reduce his medication. (R. at 595, 658.) Over the next several months, he reported to Dr. Crane "substantial improvement" with up to "80% relief" from his pain, a more active lifestyle, no more excessive sleeping during the night and no napping during the day. (R. at 652-56.) Indeed, at that time, Plaintiff was reporting that his pain had subsided to a "1" on a scale from one to ten. (R. at 652.)

Plaintiff continued to treat with Dr. Crane throughout most of 2008, reporting varying degrees of pain relief. For example, in March 2008, he reported continued lower back pain, but with "profound relief" and "significant improvement." (R. at 650.) This assessment was couched with the notation that Plaintiff considered "getting out of bed and going to the mailbox" to be "improvement." (R. at 650.) Yet again, one month later, Plaintiff indicated that his pain level was a "3" on a scale from one to ten and reported significant relief from the medication. (R. at 648.) But by June of that year, Plaintiff was

3

experiencing "more frequent, more profound low back pain." (R. at 646.) To alleviate the pain, Dr. Crane performed a radiofrequency ablation on the right lower lumbar facet joints. (R. at 640.) The procedure yielded results—within one month Plaintiff once again reported "substantial improvement," improved mobility, and decreased reliance on medication. (R. at 638.)

Also in September 2008, Plaintiff returned to Dr. Simpson, who had first referred him to Dr. Mehta in 2005, to have him complete forms establishing Plaintiff's range of motion and residual functional capacity ("RFC").[2] (R. at 631, 633-37.) In the forms, Dr. Simpson opines that Plaintiff cannot perform even sedentary work during an eight-hour workday. (R. at 633-37.) To that end, he concluded that Plaintiff: exhibited limited range of motion in his cervical and lumbar spine; demonstrated full (5/5) strength in upper and lower extremities; had abnormal coordination, gait, and station; showed normal reflexes in the upper extremities but depressed reflexes in the lower extremities; could sit for thirty minutes, stand for ten minutes, and walk for ten minutes continuously in an eight-hour workday without changing positions; and, could lift zero to five pounds frequently and six to ten pounds occasionally during an eight-hour day. (R. at 633-36.) Although Plaintiff characterizes his treatment with Dr. Simpson as "consistent," the records reveal no treatment

---

[2] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities on a 'regular and continuing basis.' A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The ALJ must describe the maximum amount of work-related activity the claimant can perform—in an ordinary work setting on a regular and continuing basis—based on the evidence available on the case record. *Id.*

with Dr. Simpson between the July 8, 2005 MRI and his completion of the forms in September 2008. (*Compare* R. at 351 *with* R. at 631, 633-37.)

In addition, Dr. Constant, a state agency physician, reviewed Plaintiff's medical records and rendered an opinion in October 2007. Dr. Constant did not personally examine Plaintiff, relying solely on his review of the medical record to form his opinion. (R. at 448-53.) He concluded that Plaintiff retained the RFC to perform light work that never required climbing ladders, ropes, or scaffolds. (R. at 449-50.) To that end, Dr. Constant found that Plaintiff had no exertional limitations; could occasionally lift twenty pounds and frequently lift ten pounds; could stand, sit, and walk about six hours during an eight-hour day; and, he retained an unlimited ability to push and pull objects. (R. at 449.) Also, he found that Plaintiff had no postural, manipulative, visual, communicative, or environmental limitations. (R. at 450-51.)

## B. Procedural History

Plaintiff applied for disability benefits on September 4, 2007, claiming disability under the Social Security Act (the "Act") due to heart failure and degenerative disc disease with an alleged onset date of May 1, 2007. (R. at 87-93.) The SSA denied Plaintiff's claim in the first instance on October 11, 2007, and upon reconsideration on February 13, 2008. Thereafter, Plaintiff filed a written request for a hearing before an administrative law judge ("ALJ").

After conducting a hearing on October 16, 2008, the ALJ issued an opinion on March 19, 2009 awarding benefits effective July 31, 2008, thus rejecting Plaintiff's earlier alleged onset date of May 1, 2007. (R. at 10-23.) More precisely, the ALJ concluded that

Plaintiff's age category changed in July 2008 such that Grid Rule 202.06 automatically resulted in a finding of "disabled" at that time. 20 C.F.R. § 404.2(c)(4). Considering the evidence of disability related to the earlier onset date, the ALJ concluded that Plaintiff retained the RFC to perform the functions of other occupations which exist in significant numbers in the national economy. (R. at 22-23.) Thus, the issue raised on appeal is not whether Plaintiff should receive benefits, but whether the ALJ should have concluded that he was entitled to benefits at an earlier time. (Pl.'s Mem. at 1.)

On February 7, 2011, Plaintiff filed a Complaint in this Court, contesting the Commissioner's decision under 42 U.S.C. § 405(g).[3] Plaintiff challenges the ALJ's application of the treating physician rule with respect to Dr. Simpson's opinion and the ALJ's credibility analysis. (Compl. at ¶¶ 6-7.) Both parties filed motions for summary judgment, which were referred to the Magistrate Judge for an R&R. Upon review, the Magistrate Judge concluded that substantial evidence existed to support the ALJ's findings with respect to both the medical opinions and Plaintiff's credibility. (R&R at 21-23.)

---

[3] 42 U.S.C. § 405(g) provides, in pertinent part:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides.

At the time he filed suit, Plaintiff was a resident of Chesterfield, Virginia. (Compl. at ¶ 3.) Venue is therefore proper in this Court. E.D. Va. Loc. R. 3(B)(4).

Plaintiff has objected to the R&R on several grounds. First, he contends that the sole objective evidence in the medical record supports Dr. Simpson's opinion. Second, he takes umbrage with the ALJ's emphasis on the conservative nature of the treatment. Finally, he argues that his admitted daily activities are consistent with an RFC permitting sedentary work. The matter is now ripe for disposition.

## II. STANDARD OF REVIEW

This Court reviews *de novo* any part of the Magistrate Judge's R&R to which a party has properly objected. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). A reviewing court may accept, reject, or modify, in whole or in part, the Magistrate Judge's recommended disposition. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3)

"Determination of eligibility for social security benefits involves a five-step inquiry." *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002); *see also Johnson v. Barnhart*, 434 F.3d 650, 653 n.1 (4th Cir. 2005). At the first step, the claimant must demonstrate that she is not engaged in substantial gainful activity at the time of application. 20 C.F.R. § 404.1520(b). Second, the claimant must prove that she has "a severe impairment . . . or combination of impairments which significantly limit[] [her] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). At the third step, if the impairment matches or equals one of the impairments listed in the Act, and the impairment lasts—or is expected to last—for at least twelve months, then it constitutes a qualifying impairment and the analysis ends. *Id.* § 404.1520(d); *see* 20 C.F.R. pt. 404 subpart P app. 1 (listing impairments). If, however, the impairment does not meet one of those listed, then the ALJ must compare the claimant's RFC with the "physical and mental demands of [the claimant's] past relevant

work." *Id.* § 404.1520(f). If such work can be performed, then benefits will be denied. Finally, if the claimant cannot perform past work, then the burden shifts to the Commissioner to show that the claimant is capable of performing other work that is available in significant numbers in the national economy. *Id.* § 404.1520(g)(1).

When reviewing a denial of benefits by the Commissioner pursuant to 42 U.S.C. § 405(g), this Court must accept the Commissioner's findings of fact if they are supported by substantial evidence and were reached by applying the correct legal standard. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. Jan. 5, 2012) (citing *Johnson*, 434 F.3d at 653); *Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006); *see also Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (clarifying that the question is not whether the claimant is disabled, but whether the ALJ's finding of no disability is supported by substantial evidence). A finding is supported by substantial evidence if it is based on "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." *Johnson*, 434 at 653. In other words, substantial evidence requires more than a scintilla, but less than a preponderance of the evidence. *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001).

In determining whether substantial evidence exists, the Court must consider the record as a whole. *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991). The Court may not, however, weigh conflicting evidence, evaluate the credibility of evidence, or substitute its own judgment. *Hancock*, 667 F.3d at 472 (citation and internal quotation marks omitted); *Mastro*, 270 F.3d at 176 (quoting *Craig*, 76 F.3d at 589). Thus, if "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the Court must defer to the Commissioner's decision. *Johnson*, 434

F.3d at 653. At the same time, the Court "must not abdicate [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974) (citations omitted). If the Commissioner's decision is not supported by substantial evidence in the record, or if the ALJ has made an error of law, the Court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

## III. ANALYSIS

The Court agrees with the Magistrate Judge's conclusion that substantial evidence supports the ALJ's findings. Essentially, each of Plaintiff's objections ask this Court to re-weigh evidence—an exercise beyond this Court's authority. *Hancock*, 667 F.3d at 472 (citation and internal quotation marks omitted). Thus, the ALJ's decision must stand and the Court will adopt the R&R.

### A. Objective Medical Evidence

Plaintiff's first objection is that "the only objective evidence which is cited by the R&R (and the ALJ) is [*sic*] 'findings of only mild lower extremity weakness.'" (Pl.'s Objs. at 2, citing R&R at 15-21.) As Plaintiff explains, "[t]he fact that the lower extremity weakness is characterized as 'mild' does not . . . detract from the fact that there is objective abnormality." (Pl.'s Objs. at 2.) Following Plaintiff's logic, Dr. Simpson's opinion must be given significant weight, because he relies upon objective medical evidence to establish the existence of an abnormality. In other words, Plaintiff argues that by establishing an abnormality through objective evidence, Dr. Simpson's opinion concerning that abnormality must be accepted, notwithstanding any evidence to the contrary.

Plaintiff's objection attempts to view a single piece of medical evidence in isolation. As the Magistrate Judge correctly noted, the Fourth Circuit allows an ALJ to reject a treating physician's opinion when unsupported. (R&R at 16-17.) Indeed, "circuit precedence does not require that a treating physician's testimony 'be given controlling weight.'" *Craig*, 76 F.3d at 590 (quoting *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)). Although the regulations require that a *properly supported* treating physician opinion be given controlling weight, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence *or if it is inconsistent with other substantial evidence*, it should be accorded significantly less weight." *Mastro*, 270 F.3d at 178 (emphasis added) (citing *Craig*, 76 F.3d at 590); *see also* 20 C.F.R. § 416.927(d)(2). Thus, it is not enough that there exists *some* evidence to support the treating physician's opinion. If the opinion is "inconsistent with other substantial evidence," the ALJ may give it less weight. Viewing a single piece of evidence in isolation—as Plaintiff demands—would ignore this rule and prohibit the ALJ from weighing the opinion in the context of the complete medical record.

Here, several inconsistencies existed between Dr. Simpson's opinion and other evidence. Taken together, the medical records of Drs. Mehta and Crane showed varying degrees of pain relief as a result of Plaintiff's prescribed course of treatment. At times, these treating experts indicated that Plaintiff was showing significant improvement. (R. at 373, 595, 638, 652-58.) There also exists a three-year gap during which Dr. Simpson did not provide significant treatment to Plaintiff—at least none related to his back problems. (R. at 351, 631, 633-37.) It was during this gap that Drs. Mehta and Crane indicated that Plaintiff showed signs of improvement. To the extent that Dr. Simpson's opinion was

inconsistent with such records or failed to reconcile Plaintiff's improvements, the ALJ was not required to take his opinion at face value. *Mastro*, 270 F.3d at 178.

Moreover, Dr. Constant opined that Plaintiff retained the RFC to perform light work. (R. at 448-53.) As a non-examining physician with expertise in Social Security evaluation, the ALJ was required to consider the opinion and assign it appropriate weight. 20 C.F.R. § 404.1527(e)(2)(i). The ALJ in this case assigned Dr. Constant's opinion "some, but not controlling" weight. 20 C.F.R. § 404.1527(c). Taken together with the other inconsistencies described above, Dr. Constant's opinion casts doubt on that offered by Dr. Simpson, and it was up to the ALJ to resolve such doubts. *Craig*, 76 F.3d at 589 (clarifying that the question is not whether the claimant is disabled, but whether the ALJ's finding of no disability is supported by substantial evidence). Accordingly, the Court will not disturb those findings, and the Plaintiff's objection to the R&R on this point will be overruled.

## B. Conservative Treatment

Plaintiff also challenges the characterization of his treatment as "conservative" and the ALJ's emphasis on this point. There exists no bright-line rule between what constitutes "conservative" versus "radical" treatment. Nevertheless, when evaluating a claimant's subjective allegations of pain, the ALJ is required by regulation to consider "what medications, treatments or other methods [Plaintiff] use[s] to alleviate" his pain. 20 C.F.R. § 404.1529(c)(3). This includes "[t]he type, dosage, effectiveness, and side effects of any medication." 20 C.F.R. § 404.1529(c)(3)(iv). In characterizing Plaintiff's treatment as "conservative," the ALJ was merely placing the treatment in context to conduct the required evaluation.

11

Regardless of whether the treatment was "conservative" or "radical," the effectiveness here was evident from the record—several times Plaintiff reported improvement. (R. at 373, 595, 638, 652-58.) The fact that relatively minor treatments resulted in demonstrable improvement conflicts with Dr. Simpson's opinion and Plaintiff's characterization of his pain. This is exactly the sort of factual discrepancy within the ALJ's sphere of authority as fact finder and beyond this Court's review. *Hines*, 453 F.3d at 561. Thus, Plaintiff's objection on this aspect of the R&R will be overruled.

### C. Daily Activities

For similar reasons, the Court must overrule Plaintiff's objection to the ALJ's consideration of admitted daily activities. Citing *Tyler v. Weinberger*, 409 F. Supp. 776, 785 (E.D. Va. 1976), Plaintiff asks this Court to "weigh conflicting evidence, at least insofar as is necessary to determine that the evidence in support of [the ALJ's] decision is substantial in relation to the evidence as a whole." (Pl.'s Objs. at 6.) But the Court in that case was also careful to characterize the exercise as a "limited weighing process" in which the "Fourth Circuit has [] said that resolution of conflicts in the evidence, including conflicting medical opinions and determinations of the credibility of witnesses is not for the Courts." *Id.* (citing *Moss v. Gardner*, 411 F.2d 1195 (4th Cir. 1969)). In a recent explication of the substantial evidence standard, the Fourth Circuit reiterated that "'[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ].'" *Hancock*, 667 F.3d at 472 (quoting *Johnson*, 434 F.3d at 653 (alteration in original)).

Here, Plaintiff contends that his admitted daily activities "are entirely consistent with . . . sedentary work" and inconsistent "with the demands of 'light' work." (Pl.'s Objs. at 5.) These include such activities as occasionally operating a riding lawnmower, helping his wife with shopping and cooking, and reading three to four hours at a time. (R. at 38-40.) Logically, the broader the RFC category, the more inclusive it is of various types of daily activities. Thus, if a certain set of activities is consistent with sedentary work it is also consistent with light work—though the opposite is not necessarily true. Generally, a person capable of more strenuous work, such as "light" work, could also perform the less strenuous tasks involved with "sedentary" work. Either way, reasonable minds could differ as to whether Plaintiff's admitted daily activities permit him to perform "light" work, and the Court must defer to the ALJ's conclusion on this point. *Hancock*, 667 F.3d at 472.

Moreover, as the Court has already explained, the ALJ did not rely on any single piece of evidence, but considered numerous inconsistencies in the record to reach his conclusion. The ALJ did not rely on Plaintiff's admitted daily activities alone, but considered them together with other medical records and opinions. Thus, his conclusion that Plaintiff's admitted daily activities counseled against a finding of disability was supported by substantial evidence. Plaintiff's objection on this basis is overruled.

## IV. CONCLUSION

Based on the foregoing analysis, this Court will adopt the Report and Recommendation of the Magistrate Judge. Accordingly, Plaintiff's Motion for Summary Judgment will be denied and Defendant's Motion for Summary Judgment will be granted.

Because it is supported by substantial evidence, the Commissioner's decision will be affirmed.

An appropriate Order will accompany this Memorandum Opinion.

                                         /s/
                                Henry E. Hudson
                                United States District Judge

Date: Aug 21, 2012
Richmond, Virginia